## JOHN R. NEVIUS *et al.*

### *v.*

## THOMAS R. GOURLEY *et al.*

#### *Filed at Ottawa May 18, 1880.*

1. WILLS—*devise upon condition.* Where a devise is to take effect only upon the performance by the devisee of a precedent condition, the condition must be strictly performed, and where there is a substantial deviation from the intent of the testator as expressed in the will, the title will not vest. And a court of chancery will never vest an estate when, by reason of a condition precedent, it will not vest in law.

2. And if the precedent act to be performed consists of several particulars, every particular must be performed before the estate can vest or take effect.

3. A will provided that if a devisee named should pay certain legacies, specified, "out of his own private funds," within one year from the date of the death of the testator, and should settle the estate (of which he was appointed the executor) without any other charge to said estate, then the testator "gave and bequeathed" to such devisee a certain described tract of land, the will further providing: If the said devisee should not fully comply with the foregoing conditions, he should have no lien on the land mentioned. It was *held*, the conditions named were precedent conditions, and unless performed according to the intent of the testator, the title to the land would not vest.

4. SAME—*as to the manner of paying a legacy.* Where land is devised upon condition that the devisee shall pay a money legacy specified in the will, if the legatee sees proper to accept the promissory note of the devisee of the land, in payment of the legacy, that will be regarded as a good payment under the will.

5. But where the will provides that the legacy shall be paid by the devisee "out of his own private funds," a payment in rents belonging to the estate (the devisee being also the executor of the estate) will not be taken as a payment, such as the will requires.

6. SAME—*payment to the husband of a legatee.* Where a legacy was left to a married woman by a will made in 1877, a payment of the same to the husband of the legatee, without authority from her, will not be such a payment as will bar her rights.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Mercer county, the Hon. GEO. W. PLEASANTS, Judge, presiding.

Messrs. BASSETT & WHARTON, for the appellants:

The devise of land to Henry W. Nevius was contingent, depending upon his payment of certain legacies within one year, and consequently he had no vested title in the land. *Beatty* v. *Montgomery,* 21 N. J. Eq. 325; *Clayton* v. *Somers,* 27 id. 230. And the title would not vest until the contingency happened. *Candles* v. *Dinkle,* 4 Watts, 143; *Collier* v. *Stoughton,* 20 Ala. 263; *Huckabee* v. *Swoop,* 20 id. 491; *Burns* v. *Clark,* 37 Barb. 496; *Tilden* v. *Tilden,* 13 Gray, 103; *American Col. Society* v. *Trustees,* 2 Allen, 202.

And where the title vested, but the will enjoined some restrictions or act to be done by the devisee as a condition of enjoyment, a failure by the legatee to perform the conditions would cause a forfeiture of the legacy. *Clapp* v. *Stoughton,* 10 Pick. 463; *Hayden* v. *Stoughton,* 5 id. 528; *Rogers* v. *Law,* 1 Black, (U. S.) 253; *Shackleford* v. *Hall,* 19 Ill. 211.

Where the special legacy is forfeited, or fails on account of the non-performance of a condition of the will by the legatee, the legacy passes to the residuary legatee, and not to the heirs. *Hayden* v. *Stoughton,* 5 Pick. 528; *Brigham* v. *Shattuck,* 10 id. 306; *Clapp* v. *Stoughton,* 10 id. 463; Redfield on Wills, 2 vol. p. 454, sec. 22, and p. 504, sec. 27; *Booth* v. *Montgomery,* 21 N. J. Eq. 324; *Heveat* v. *Redd,* 50 Ga. 181; *Bradford* v. *Bradford,* 19 Ohio St. 546.

And where the executor or residuary legatee is to sell the land and divide the money arising from the sale among the heirs of the intestate, such heirs will not take a vested interest or legacy in the land, but only in the money arising from the sale. *Estate of Sebastian,* 4 Phila. 236; *The People, etc.* v. *Jennings,* 44 Ill. 488.

And such interest can not be sold on execution. *Baker* v. *Copenbardger,* 15 Ill. 103.

The intention of the testator should be carried out in the construction of the will. *Markillie* v. *Ragland,* 77 Ill. 98; *Mason* v. *Ely,* 38 id. 138; *The People* v. *Jennings,* 44 id. 488.

Where a portion of the mortgage debt is due, and the mortgage is foreclosed as to the portion due, it is not proper to decree that the sale to be made under the decree of foreclosure shall be subject to that portion of the mortgage debt still to become due. *Hards* v. *Burton*, 79 Ill. 510; *Smith* v. *Smith*, 32 id. 198; *Weiner* v. *Heintz*, 17 id. 259.

The defendants to the bill of complaint, other than Henry Nevius, claimed title under the will, and not under Henry Nevius. Their right arose by title distinct and separate from that of complainant, and there is no jurisdiction in equity to try title to real estate. As to all of the appellants the bill should have been dismissed, as they were not proper parties to the foreclosure. *Burton* v. *Gleason*, 56 Ill. 25; *Comstock* v. *Hennebery*, 66 id. 212; *Kennedy* v. *Kennedy*, 66 id. 190; *Shubher* v. *Belsey*, 79 id. 307; *Gage* v. *Perry*, 93 id. 176.

Messrs. PEPPER & WILSON, for the appellees:

The first point is: That the legacies were paid and receipted for as required by the will; that the giving the notes to the two sisters was payment, because they took the notes with the purpose and intention of enabling their brother to secure the title and settle with the court, which he could only do by making payment; and having done so they are estopped from saying that it was not payment. It would be inequitable and unjust to allow them so to do, and would enable them to perpetrate a fraud upon H. W. Nevius and his grantees, and this neither a court of equity nor law will permit.

On the question of a note being payment, we cite: *Clark* v. *Smith*, 9 Conn. 385; *Davidson* v. *Bridgeport*, 8 id. 477; *Bell* v. *Porter*, 9 id. 31; *French* v. *Irwin*, 4 Bax. 1 Tenn. 401; *Moses* v. *Trice*, 21 Gratt. 556; *Gibson* v. *Tobey*, 46 N. Y. 337; *Hoopes* v. *Strastiryn*, 37 Md. 394; *James et al.* v. *Harkly*, 15 Johns. 273; *Arnold* v. *Camp*, 12 id. 409; *Haydell* v. *Siver*, 3 Denio, 410; *Thatcher* v. *Dinsmore*, 5 Mass. 299; *Whitcomb* v. *Williams*, 4 Peck, 28; *Watkins* v. *Hill*, 8 id. 322; *Reed* v. *Upton*, 10 id. 525; *Isley* v. *Jewett*, 2 Metc. 168; *Butts* v. *Dean*,

2 id. 76; *Magee* v. *Cormack*, 13 Ill. 289; *Ralston et al.* v. *Wood*, 15 id. 171; *Ryan* v. *Dunlap et al.* 17 id. 43; *Smalley* v. *Edsy*, 19 id. 211; *Stevens* v. *Bradley*, 22 id. 244; *Gage* v. *Lewis*, 68 id. 618; *Yates* v. *Valentine*, 71 id. 643.

Again, the beneficiaries receipted, and it does not matter whether they ever received a dollar or not. They had the right to give their brother the sums bequeathed to them, and look to him in the future, or never, if they chose. In other words, the performance of the condition in a will may be voluntarily dispensed with, and if dispensed with is not necessary to the perfection of an estate. *Jones et al.* v. *Doe ex dem.* 1 Scam. 276; *Jennings* v. *Jennings*, 27 Ill. 518; *Shackleford and wife* v. *Hall et al.* 19 id. 218.

The extraordinary proposition is made, "That where a portion of a mortgage debt is due and the mortgage is foreclosed as to the portion due, it is not proper to decree that the sale be made subject to the portion of the mortgage debt still to become due," and still more extraordinary is. it that counsel cite *Weiner* v. *Heintz*, 17 Ill. 259, to sustain their position. That case is decisive of the point and in our favor, and we submit there are no decisions to the contrary in our State, and we surely think not elsewhere. The court say, in the case cited: "The land was sold to pay the note then due *and subject to the incumbrance of the mortgage to the extent of the note not then due.* Such are the provisions of the decree under which the sale was made and of the deed to the purchaser. The purchaser took the land subject to the incumbrance, became mortgagor to the extent of that note, and the land continued subject to the payment of the note, whoever should be the holder of the note or owner of the fee, and equity would enforce payment out of the land." This is plain enough, surely, and there are many more authorities just as plain, clear and distinct.

The second reference, *Smith* v. *Smith*, 32 Ill. 198, is not in point as quoted by counsel, but is negatively on our side, as the case was reversed because the decree. was for a sale for all

due and not due, when it should have been for that due, and a sale subject to the part not due.

And the third reference, *Hards* v. *Burton*, 79 Ill. 510, does not help them out. It simply discusses the difficulties of the case, and says that " the court should always, when all parties holding liens or having rights are before it, and the prior liens are due, decree the sale," etc.

The point made, that the bill should have been dismissed as to all but Henry W. Nevius, is not tenable. The question arises under the will, as to whether Henry W. Nevius performed the condition and took under the will, or whether the residuary legatee took a life estate,—the remainder going to the heirs at her death. This was and is a question eminently proper for the consideration and determination of a court of equity. Indeed there is no other tribunal that can properly determine and settle it. Moreover the defendants came into court in answer to the summons,—answered,—set up their claim and title to the property, and it is scarcely proper for them to set up that sort of defence at this late day.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill to foreclose a mortgage executed by Henry W. Nevius to appellees, on the 9th day of August, 1877, on the following described tract of land: The south half of lot No. 3, in north-west quarter of section 16, in township 13 north, range 3 west, in Mercer county; and the controverted question presented by the record is whether Nevius, the mortgagor, was seized of the property at the time the mortgage was executed.

The land in question was owned by William I. Nevius, who died testate, on the 10th day of June, 1877. The ninth clause of the will read as follows :

"I give and bequeath my son, Henry W. Nevius, lot No. 26, in the south-east quarter of section 4, in township 13 north, range 3 west of the fourth principal meridian, in the county of Mercer, and State of Illinois. And also, if the said

Henry W. Nevius shall well and truly pay, or cause to be paid, all the several notes, bonds and obligations for which I, the undersigned, am bound as security, then I give and bequeath to said Henry W. Nevius, the south half of the east half of the south-west quarter of section 9, in township 13 north, range 3 west of the fourth principal meridian, in the county of Mercer, and State of Illinois.

"Also, if said H. W. Nevius shall pay to Rebecca E. McCreight $200, to Adriania J. Park $300, and to Cornelia L. Johnson $150 (being the sums of money bequeathed to said R. E. McCreight, A. J. Park and C. L. Johnson in this will), out of his own private funds, within one year from the date of my decease, and shall settle my estate, without any other charge to said estate, then I give and bequeath to the said H. W. Nevius the south half of lot No. 3, in the north-west quarter of section 16, township 13 north, range 3 west of the fourth principal meridian, in the county of Mercer, and State of Illinois. If the said H. W. Nevius shall not fully comply with the foregoing conditions, he shall have no lien on the two lots of land last mentioned."

H. W. Nevius was appointed executor in the will, but the estate has not been settled, and whether it will ever be settled without costs to the estate, does not as yet appear.

It is apparent that unless H. W. Nevius performed the conditions named in the will, and within the time required by the terms of the will, the title to the land did not vest in him and the mortgage would create no lien on the land. In order to determine this question it will be necessary to refer to the evidence.

In regard to the payment of the legacies to Mrs. McCreight and Mrs. Johnson, we find but little trouble. Mrs. McCreight testified: " My brother came to me in the last of May or the first of June, and asked me if I would take his note for the amount of my legacy and give him a receipt, so that he could settle with the court. * * * I signed the receipt and took the note."

Mrs. Johnson, in regard to the payment of her legacy, testified: "I accepted of my brother, Henry W. Nevius, his note in payment of the legacy, in order that he might settle with the court, and I signed and sent him a receipt for the legacy in order that he might settle with the court inside of twelve months after his father's death." It is true these legacies were not paid in money, but if the legatees saw proper to accept payment in the notes of H. W. Nevius in lieu of money, we are aware of no reason why the payment would not be good and binding and a substantial compliance with the terms of the will. But it was also necessary to establish by proof that Mrs. Park was paid the sum devised to her, and if the proof fails to show this fact, then the title to the property would not pass, although the other two devisees were paid. Two of the complainants testified that in the month of September, 1878, they had a conversation with Mrs. Park, in which she admitted that she had received the amount due her under the will, and had receipted for the same, but Mrs. Park in her evidence expressly denied that she made the statement. Here there is such a conflict in the evidence that a court would not be justified in basing a decree upon that, unless corroborated by other satisfactory proof. If the money was actually paid to Mrs. Park by her brother, these two parties doubtless knew the fact, and although their interest was adverse to complainant's, it is unreasonable to believe they would deny the fact when placed upon the stand. They were both sworn for complainant, and Mrs. Park admits that on one occasion her brother brought her a receipt to sign and she signed it, but she expressly says that she did not read it and had no knowledge of its contents; but if she gave a receipt and no money was paid her, the receipt would amount to nothing, and, if her evidence is reliable, she never received a dollar of the legacy from her brother or any other person. Nevius, in his testimony, corroborates Mrs. Park, that he obtained from her a receipt, but it was not for the legacy. It also appears from his evidence that he never gave

her a note for the legacy, neither did he pay her the money or any part of the same, but he let her husband have a horse at $90, and allowed him $127 on the rent of the land in question, which he had leased before the death of the testator, and paid him in other things enough more to make up the $300. The record, however, contains no evidence that Mrs. Park had authorized her husband to receive the money coming to her under the will, and in the absence of authority a payment to the husband would not be a payment to her.

But if the payment to the husband could be regarded as a payment to the wife, there is still a fatal objection to the payment. The will required Nevius to pay the legacies from his own funds, and a payment from rents belonging to the estate could not be regarded as a compliance with the requirement of the will, and yet $127 of the $300 paid was from rents arising under a contract made between the testator in his lifetime and Park. The payment of the legacies by Nevius from his own private funds within one year from the death of the testator was a precedent condition, and if the condition was not performed, the title to the land would not vest.

It is apparent from the language of the will that the testator did not intend that the estate should vest unless the conditions were fully performed by H. W. Nevius. That there might be no uncertainty or doubt in regard to the matter, the testator used the following language: "If the said H. W. Nevius shall not fully comply with the foregoing conditions, he shall have no lien on the two lots of land last mentioned." We understand the rule to be that a precedent condition must be strictly performed, and where there is a substantial deviation from the intent of the testator, as expressed in the will, the title will not vest. Kent, in vol. 4, sec. 125, in discussing this subject, says: "Precedent conditions must be literally performed, and even a court of chancery will never vest an estate, when, by reason of a condition precedent, it will not vest in law. It can not relieve from the consequences of a condition precedent unperformed."

In *Vanhorne* v. *Darrence*, 2 Dall. 317, it is said, where an act is previous to an estate, and that act consists of several particulars, every particular must be performed before the estate can vest or take effect. See also, Jarman on Wills, 2d edition, vol 1, page 672, and notes, and *Reynesh* v. *Martin*, 3 Atk. 330. In the last case cited it is said: "But in our law, where the condition is precedent, the legatory takes nothing till the condition is performed, and consequently has no right to come and demand the legacy, but it is otherwise where the condition is subsequent."

In the case under consideration there was an attempt to perform the conditions in order that the title to the property might vest, and while we might with propriety hold that two of the legacies were paid, as required by the terms of the will, yet, in regard to the bequest to Mrs. Park, we can not, without a clear disregard of the evidence, hold that H. W. Nevius complied with the conditions of the will, which was necessary in order to vest the title of the property in him. Had the complainants before the mortgage was executed called on Mrs. Park and obtained from her an admission that she had received from her brother the amount devised to her, she might now be estopped from claiming that the money had not been paid her, but such was not the case. The conversation they had with her was long after the mortgage was executed, and hence it can not be claimed that they were misled when they received the mortgage or acted on her declarations or conduct.

As the conditions upon which the title to the property was to vest in H. W. Nevius were not fulfilled by him, it follows that the mortgage he gave the complainants could create no lien upon the premises as against the defendants in the bill, and the court erred in rendering a decree of foreclosure,—for which error the judgment will be reversed and the cause remanded.

*Judgment reversed.*