(No. 13173.—Judgment affirmed.)

FAIRVIEW LODGE No. 350 ANCIENT FREE AND ACCEPTED MASONS, Defendant in Error, *vs.* JOHN W. GADDIS, Exr. *et al.* Plaintiffs in Error.

*Opinion filed February 15, 1921—Rehearing denied April 7, 1921.*

1. WILLS—*wills are to be more liberally construed than deeds.* Greater latitude is allowed in the construction of wills than in the construction of deeds, and in construing a will the court will view it from its four corners in order to arrive at the intention of the testator.

2. SAME—*ordinary meaning of words will not prevail to defeat intention of testator.* The ordinary meaning of the words in a will should *prima facie* prevail, but such meaning will not be given to the extent of defeating an obvious general intention of the testator.

3. SAME—*what is a substantial compliance with precedent condition for vesting residuary estate in a lodge.* A provision in a will giving the residuary estate of the testatrix to a fraternal lodge on condition that a certain Masonic association convey specified property to the lodge and "that all stockholders in said Masonic association donate their share or shares of stock" to the lodge and deliver the canceled certificates to the executor, is substantially complied with by a proper conveyance to the lodge by said association and the dissolution of the association by a majority vote of the stockholders, although two of the stockholders refuse to deliver their canceled certificates to the executor.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Fulton county; the Hon. G. W. THOMPSON, Judge, presiding.

BURNETT M. CHIPERFIELD, W. R. CURRAN, RALPH DEMPSEY, and CLAUDE E. CHIPERFIELD, for plaintiffs in error.

HARVEY H. ATHERTON, and LAWYER & HAINLINE, for defendant in error.

Per CURIAM: Fairview Lodge No. 350 Ancient Free and Accepted Masons, of Fairview, Illinois, defendant in error, (hereinafter referred to as the lodge,) on June 8, 1918, filed its petition in the county court of Fulton county against John W. Gaddis, executor of the last will and testament of Mary C. Swegle, deceased, and Hazel Schleich, Mildred Schleich, Mary Catherine Luman, Lucy Ellen Swigert, Grace Gunnett Hoxworth and Carrie Gunnett Ulm, plaintiffs in error, praying that the residuary estate of Mary C. Swegle be paid over to the lodge. The county court denied the prayer of the petition. On appeal the circuit court of said county entered a judgment in favor of the lodge. The Appellate Court for the Third District affirmed the judgment. The case comes to this court on *certiorari* proceedings.

Mary C. Swegle died testate May 30, 1918. Her last will and testament was admitted to probate June 28, 1918, and John W. Gaddis was appointed executor and qualified. By the first clause of her will testatrix directed that her debts and funeral expenses be paid. By the second clause she bequeathed $500 to the Reformed (Dutch) Church of Fairview. In the third clause she bequeathed $500 as an endowment fund to the Methodist Episcopal Church of Fairview, and by the fourth clause she bequeathed $500 each to the six plaintiffs in error above mentioned. The fifth clause is in the following words and figures, to-wit:

"*Fifth*—I give, devise and bequeath to Fairview Lodge No. 350 Ancient Free and Accepted Masons, of Fairview, Illinois, all the balance and residue of my estate upon the following conditions: That the Fairview Masonic Association of Fairview, Illinois, deed and convey to said lodge the building and lot now owned by them, being the east part of lot No. twelve (12) in the original plat of the town

of Fairview, in the county of Fulton and State of Illinois; and provided further, that all stockholders in said Masonic Association donate their share or shares of stock held by them in said association to the said Fairview Lodge No. 350 A. F. & A. M., and the canceled certificates of stock be delivered to my executor hereinafter named; that the said lodge shall first pay of the indebtedness on said property, and whatever balance is left in the residue of my estate is to form and placed in a trust fund, which is to loaned on real estate security, and the proceeds of the interest and income each year is to be equally divided between said lodge and Fairview Chapter No. 99 Order of the Eastern Star, of Fairview, Illinois,. for their support and maintenance. The said lodge shall appoint or elect from their membership a trustee to handle the said trust fund. In case the said lodge and said Masonic Association, within one year after my death, do not accept the residue of my estate upon the terms and conditions as above set forth, it is then my will that the residue of my estate be equally divided between the six persons named in the fourth clause of this my will upon the same conditions as there provided."

The testatrix by her will then directed, authorized and empowered her executor to make sales of all her property, and to deed and convey her real estate, and to divide the proceeds of her property as in her will directed.

The executor filed his final report July 3, 1919, showing a balance of $11,293.01 after payment of all debts, claims and legacies against the estate, excepting the residuary bequest. The masons at Fairview had two organizations,—the lodge aforesaid and the Masonic Association. The association was incorporated July 23, 1908, the shares of stock being $25 each. On December 3, 1917, the association had an annual meeting of the stockholders, at which all were present. At this meeting they adopted a resolution to convey to the lodge their building and lot described in the fifth clause of the will, and the deed was executed in

accordance with the resolution and afterwards delivered to the lodge. There was an indebtedness against the property of $2500, and this indebtedness was named as the consideration in the deed. A resolution was then adopted to dissolve the corporation, and January 11, 1918, fixed as the time for a special meeting of stockholders to dissolve it. The resolutions were all adopted by a vote of 247 for and 10 against. The ten shares voting against were owned two by Calvin J. Cooper and eight by A. J. Gunnett, the father of two of the plaintiffs in error, Carrie Gunnett Ulm and Grace Gunnett Hoxworth. The entire shares of the corporation were 257. On January 11, 1918, at the special meeting a resolution was duly adopted by more than two-thirds of the capital stock to dissolve the corporation. It was expressly stated in the resolutions that they were considered and voted with the express purpose of complying with the conditions of the fifth clause of the will of the testatrix. The association was duly dissolved and the proceeds of the remainder of the property were distributed and paid to the members of the association. Each one received $1.45 on each share of stock owned by him, the total amount distributed being $372.65, after paying all debts and reserving $74.45 for payment of taxes and expenses of dissolution. On February 22, 1918, a notice was served on the executor to the effect that the association had dissolved and that the stock had been canceled, and that this was all done by a vote of the stockholders in order to comply with the conditions of the fifth clause of the will. On May 1, 1918, all of the canceled certificates of stock were delivered to the executor excepting two certificates, representing the ten shares held by Gunnett and Cooper. The lodge took the deed to the property and gave its notes for the $2500 indebtedness on the property. The association received back its note for the $2500 indebtedness, canceled, and all of its debts are paid, its property distributed and it is an extinct corporation.

A consideration of all of the provisions of the fifth clause of the will makes it clear that the devise to the lodge is on the condition that the association and the stockholders thereof should, within one year after the death of the testatrix, vest the title to the building and lot in the lodge, subject only to the debt of $2500 then existing against the property. It was not the intention of the testatrix to require the stockholders, as a condition to the devise in question, to donate and transfer to the lodge their certificates of stock, thereby transferring all their interest in the association and its property, as seems to be the contention of the plaintiffs in error. This is made clear when we consider this provision of the fifth clause: "That the said lodge shall first pay of [off] the indebtedness on said property, and whatever balance is left in the residue of my estate is to form and [be] placed in a trust fund, which is to [be] loaned on real estate security, and the proceeds of the interest and income each year is to be equally divided between said lodge and Fairview Chapter No. 99 Order of Eastern Star, of Fairview, Illinois, for their support and maintenance." The testatrix evidently desired the lodge should have the building of the association for its own use clear of indebtedness against it. She was therefore willing to make the devise to the lodge if the association and the stockholders were willing to vest their interest in the building and lot in the lodge subject to the indebtedness against them. Had it been intended by her that the stockholders should further give up all their interest in the association by donating and transferring their certificates of stock to the lodge, the testatrix would certainly have provided that the fund distributed to the stockholders after the dissolution of the association should be first applied by the lodge to the payment of the debt against the building. No such provision occurs in this clause, and there is no provision in that clause for the dividing up of such fund between the lodge and the association as beneficiaries. The lodge is to

first pay off the $2500 indebtedness out of the residue fund devised by the will.

The testatrix evidently entertained the idea that in order for the association and its stockholders to carry out the above requirements on their part it would be necessary for the association to make a deed and then to dissolve the corporation and wind up its affairs and distribute to the stockholders its other property, as was actually done in this case. She was desirous that the stockholders cancel their claim against the building. She therefore required that the certificates of stock be canceled and delivered to her executor. These various steps were a means simply suggested to her mind that the stockholders carry out their part of the requirements of the will, and the filing of the receipts with her executor was simply a requirement for the purpose of furnishing evidence to her executor that the stockholders had performed their part of the requirements of the testatrix, and which evidence would be at all times on file in the estate. What she meant by "donate their share or shares of stock" to the lodge is, that they were to give their interest in the building, or have the same given, and deeded to the lodge by the association.

In the construction of wills greater latitude is allowed than in the construction of deeds. (*Webbe* v. *Webbe,* 234 Ill. 442.) In construing a will courts view it from its four corners, and after considering the entire contents of the will attempt to arrive at the intention of the testator. The ordinary meaning of the words in a will is the one which *prima facie* should prevail, yet such meaning will not be given to the extent of defeating an obvious general intention of the testator. *Blackmore* v. *Blackmore,* 187 Ill. 102; *Johnson* v. *Askey,* 190 id. 58; *Smith* v. *Winsor,* 239 id. 567.

Plaintiffs in error contend that the building and lot in question were devised to the lodge on at least three conditions precedent, and that it is necessary that all of these conditions be literally and fully performed before any in-

terest in the residuary estate could vest in the lodge. The first of these conditions is, that the Fairview Masonic Association should convey to the lodge the premises described in clause 5. Plaintiffs in error admit that this condition has been fully performed. The second condition is that all stockholders in said association donate the shares of stock held by them in the association to the lodge. The third condition is that the canceled certificates of stock be delivered to the executor named in the will, within one year after the death of the testatrix. They claim that neither of the last two conditions has been fully and literally performed, and that for that reason the devise to the lodge never became effective, and that the plaintiffs in error are entitled to the residuary fund in accordance with the terms of the devise over to them. In arguing the failure to perform the second condition aforesaid it seems to be the contention that the provisions of the fifth clause of the will required that the stockholders donate and actually assign and transfer their certificates of stock in the association, and all their interest therein, to the lodge before the devise to the lodge could be carried out. We have answered this argument by our interpretation of the will aforesaid, in which we hold, in substance, that all the stockholders were required to do was to do what was necessary to donate the property to the lodge or vest it in the lodge free and clear of any claim by them. Two hundred and forty-seven of the stockholders out of 257 have acted in the matter of assenting to the lodge having the property without any claim by them, and voted to make a deed to the lodge, voted for the dissolution of the association and the winding up of its affairs and the distribution of the remainder of its assets. Their action in that regard binds them absolutely. The debts of the association have been paid and there are no creditors to complain. By the dissolution of the corporation and the settlement and distribution of its assets every certificate of stock was destroyed or canceled. (7 R. C. L.

sec. 745.) The title to the lot was completely vested in the lodge, subject to the debt against it. It was not necessary for the stockholders to assign the certificates of stock to the lodge that were delivered to the executor. They were canceled and were no longer evidence of any interest in the association, and the will does not specifically make any such requirement that they be assigned.

We recognize the doctrine that conditions precedent to a devise of real estate must be fully performed before the title to the property can legally vest in the devisee. We held in *Nevius* v. *Gourley*, 95 Ill. 206, that a condition precedent must be strictly performed, and that where there is a substantial deviation from the intent of the testator as expressed in the will, the title will not vest. In the case of *Jacobs* v. *Ditz*, 260 Ill. 98, it was held that a substantial performance of a condition precedent was all that was required, where it was the clear intention of the testator that the devise should pass upon a substantial performance. The devise to Louis Ditz in that case was on the condition that he should pay to the testator's daughter and to his wife's son, William, certain sums of money therein mentioned and file receipts of such payment with the county clerk. Ditz tendered the sums of money so to be paid to each of the legatees therein, requiring them to give receipts for the same so that he could comply with the will. They refused to accept the money or to sign the receipts, and for that reason it was not possible to comply with the conditions, which were held to be conditions precedent. Our holding in that case was, in substance, that there was no substantial deviation from the terms imposed but that there was a substantial performance of those conditions, and that it was not within the power of the legatees therein to defeat the devise by refusing to accept the money tendered and sign the receipts.

The last sentence of the fifth clause of the will makes the devise over to the plaintiffs in error: "In case the said

296—37

lodge and said Masonic Association, within one year after my death, do not accept the residue of my estate upon the terms and conditions as above set forth." The association and the lodge did accept the residuary estate upon the terms and conditions therein mentioned and did all that was possible for them to do in complying with those terms and conditions. We hold that it was the intention of the testatrix, as expressed by the fifth clause of the will, that the property should vest in the lodge if the association and the lodge accepted the residuary estate within one year after her death and upon the terms and conditions of the will, and that substantial performance of those conditions to vest the property in the lodge, subject only to the indebtedness against the property, was all that was required of them. Conceding, then, the vesting of the property depends upon the three conditions precedent above set forth, it is immaterial that two of the stockholders holding ten shares of the 257 refused to assent to the conveyance of the property and the dissolution of the association and to surrender their certificates to be filed with the executor. They accepted their dividends without complaint or objection. Their certificates are effectually canceled. They would be of no value to the executor except as evidence. The evidence of the cancellation of the certificates of stock and the entire transactions of the association and the other members of the organization by which they sought to carry out the requirements of the testatrix are all now matters of record in the county court. It was not the intention of the testatrix that the devise to the lodge should be defeated by the mere fact that two of the stockholders holding ten shares of the stock refuse to file the canceled certificates with the executor.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*