WALTER W. SCOTT, A MINOR, JANET M. SCOTT, A
MINOR, RUBENA F. SCOTT, A MINOR, AND
THE BISHOP TRUST COMPANY, LIMITED, A
CORPORATION, GUARDIAN OF THE ESTATE
OF SAID WALTER W. SCOTT, JANET M. SCOTT
AND RUBENA F. SCOTT, MINORS, *v.* MARY N.
LUCAS.

No. 927.

SUBMISSION UPON AGREED STATEMENT OF FACTS.

ARGUED APRIL 13, 1916.                    DECIDED JUNE 13, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

WILLS—*vested remainder—defeasance—condition impossible of performance.*

Where by a last will and testament a remainder in fee is vested
in a devisee subject to defeasance by a condition subsequent and
prior to the performance of the condition such condition becomes
impossible of performance, the vested remainder becomes absolute
in the devisee and no longer subject to the defeasance provided
for in the will.

OPINION OF THE JUSTICES BY QUARLES, J.

(Robertson, C. J., dissenting.)

This is a controversy submitted upon agreed facts to obtain a decree quieting title to an undivided one-ninth interest in and to certain lands described in the submission of facts. The plaintiffs, Walter W. Scott, Janet M. Scott and Rubena F. Scott, minor children of Catherine Haunani Scott (nee Bertelmann), appear by their guardian as plaintiffs, and Mary N. Lucas, who claims the said undivided interest, appears as defendant. The settlement of this controversy depends upon the construction of certain provisions in the last will and testament of Christian Henry Bertelmann, upon which the merits of the controversy must

be decided. This will has heretofore been before this court for construction and the provisions here involved construed (*Bertelmann* v. *Kahilina,* 14 Haw. 378), where it was held that each of the six daughters of the testator, under the first and fourth items of the will, took vested remainders in fee subject to defeasance upon payment to each of them of the sum of $5000 by the three sons, or one or more of them, of the testator, as provided in the third item of the will. That item reads:

"At the expiration of the 25 years lease with the Kilauea Sugar Co. it is my sincere wish and *will* that my lands shall befall in equal shares and interest upon my three sons *Frank Charles, Henry Godfrey* and *Christian Sylvester Bertelmann* or then surviving sons or son. Provided however that at such a time these my sons or son shall pay to each one of my daughters or surviving daughters the sum of *five thousand dollars* $5000.00. In case one or two of my sons should be at that time, or within a year from that time unable to furnish, produce or raise the necessary amount to pay to each one of my daughters or surviving daughters his share of the $5000.00 per capita, the two or the one of my sons will have a right to buy the whole of my lands now leased to the K. S. Co. by paying:

"1.  To each of my daughters or surviving daughters the amount aforesaid of $5000.00.

"2.  To my shortcoming son or sons the same amount of $5000.00 each, being the same share as will be paid to my daughters. By doing so, they my sons or he my son will enter in full possession of all my lands; and their or his right and title will be undisputable, provided they or he (my sons or son) comply and fulfill the above mentioned conditions.

"3.  To my wife Susan Bertelmann a life rent of $2000.00 per annum. I make the payment of all these amounts above given a charge upon all my estate."

The defendant has purchased all of the interest of the three sons and of all of the daughters except the late mother of the plaintiffs, she having died September 10, 1915, leaving the plaintiffs as her surviving chil-

dren.  The lease mentioned in the will has expired, and the one year in which the sons, or one or more of them, may purchase or acquire the interest of their sisters under the third item of the will, hereinabove quoted, is now running.  It is contended on behalf of the defendant that Mrs. Scott, mother of the plaintiffs, having died prior to the expiration of the lease, the plaintiffs have no interest in the lands in question, and that the provision as to payment of $5000 to each of the daughters does not apply to the interest which Mrs. Scott would have if she had survived the expiration of the lease; and, that the defendant takes the whole freed from the charge of said $5000.  In furtherance of this contention it is earnestly insisted on the part of the defendant that the former decision to the effect that Mrs. Scott and the other daughters took vested remainders in fee is incorrect and that their interests, respectively, are, and were, contingent upon their survival of the expiration of the lease, and upon the failure of the sons, or one or more of them, to pay to the daughters the $5000 each.  These contentions were, we think, correctly disposed of in the former decision of this court, for the reasons therein stated.  The mother of the plaintiffs took a vested remainder in fee, subject to be defeated by the payment to her by the sons, or one or more of them, of the sum of $5000 within one year after the expiration of the lease.  We do not feel at liberty to disturb that decision which has been acted upon for nearly fourteen years, and which has become an established rule of property so far as the rights here involved are concerned.  The former decision, which simplifies and narrows the questions to be here decided, correctly holds that the acquisition of the interests of the daughters under the will by the sons, or one or more of them, was a mere privilege which depended upon a condition precedent—the payment of the prescribed sums—while the defeasance of the vested remain-

der in the daughters depended upon a condition subsequent—the payment to each daughter of the sum of $5000 at the time and in the manner prescribed in the will. The difference between a condition precedent and a condition subsequent is well described in *Winthrop* v. *McKim,* 51 How. Prac. 323, where the court at page 327 says:

"Conditions precedent are such as must happen or be performed before the estate can vest.

"Conditions subsequent are such as when they happen or are performed, or are not performed, as the case may be, divest, curtail or abridge an estate already vested.

"It is also a well settled rule that, where an estate is to arise upon a condition precedent, if the condition becomes impossible no estate or interest grows thereupon.

"Upon the other hand, if the performance of a condition subsequent becomes impossible, the condition is void, and the estate vests as though no such condition had been imposed."

These rules are supported by practically all authority, English and American, from the time of Sir William Blackstone to the present. Blackstone (Book 2, 154, 156) says:

"An estate on condition expressed in the grant itself, is where an estate is granted, either in fee-simple or otherwise, with an express qualification annexed, whereby the estate granted shall either commence, be enlarged, or be defeated, upon performance or breach of such qualification or condition. These conditions are, therefore, either *precedent* or *subsequent.* Precedent are such as must happen or be performed before the estate can vest or be enlarged; subsequent are such, by the failure or non-performance of which an estate already vested may be defeated. * * * These express conditions, if they be *impossible* at the time of their creation, or afterward become impossible by the act of God or of the feoffer himself, or if they be *contrary to law,* or *repugnant* to the nature of the estate, are void." See 2 Jarman, Wills, 5th ed., pp. 10, 11.

It is well settled that a condition precedent to the vesting of an estate must be strictly construed and fully per-

formed (*Nevius* v. *Gourley,* 95 Ill. 206, 213; *Martin* v. *Ballou,* 13 Barb. 119, 132; 4 Kent's Com. (13 ed.) 135, and authorities cited in note c).

It is also well settled that the performance of a condition subsequent whereby a vested estate is divested must be strictly construed and fully and literally performed else the vested estate remains absolute. The death of Mrs. Scott, mother of the plaintiffs, prior to the termination of the lease, rendered the condition subsequent, whereby the estate which vested in her should be divested, impossible of performance. There is no provision in the will whereby the estate so vested in Mrs. Scott should be divested in any mode or manner other than the one prescribed in the will itself, i. e., the payment to her of $5000, a privilege granted to the sons, or one or more of them, by the testator. That condition becoming impossible by the act of God is as though it was never made. The plaintiffs inherited from their mother the estate bequeathed to her by the will and vested in her as decided by the former decision of this court. That vested estate could only be defeated by a strict and literal performance of the condition prescribed (1 Jarman, Wills, 5th ed., 827; 2 Jarman, Wills, 5th ed., 11, 13; Roper on Legacies 618, 766, 767, 783; *Ridgway* v. *Woodhouse,* 7 Beav. 437, 49 Eng. Reprint 1134; *Ill. Land & Loan Co.* v. *Bonner,* 75 Ill. 315, 327; *McFarland* v. *McFarland,* 177 Ill. 208, 217). Conditions subsequent are not favored in law (*Davis* v. *Gray,* 16 Wall. 203, 230), and are "construed beneficially in order to save, if possible, the vested estate or interest; and if such condition prove illegal, or incapable of performance, whether as against good morals or as impossible under any circumstances, or is rendered impossible in a particular case and under existing circumstances, the gift, whether of real or personal property, relieved of the condition, becomes absolute in effect" (*Harrison* v. *Harrison,* 31 S. E. 455, 458).

We have examined a large number of decisions, both English and American, and find them all in harmony with the rules herein announced. It follows that the plaintiffs inherited from their mother the estate in the lands in controversy vested in her by the will of her father, freed from the condition subsequent whereby the same could be divested if their mother was now living. Under the conclusion at which we have arrived the sons, or either of them, cannot now defeat the estate which vested in the mother of the plaintiffs in her lifetime by reason of the provisions of the said will, which descended to and vested in the plaintiffs.

The agreed statement of facts is silent as to whether either of the sons is prepared to and desires to purchase the interest of the plaintiffs in the lands in question. Neither of the sons of the testator is a party to this submission. The defendant claims, in the event that it is held that the vested remainder which the mother of plaintiffs took under the will was not defeated by her death prior to the expiration of the lease, the right to defeat the interests of the plaintiffs by payment to them of the sum of $5000, by virtue of her having purchased the interest of each of the testator's sons. This contention fails under the conclusion reached. If the death of Mrs. Scott, mother of the plaintiffs, prior to the expiration of the lease did not make the condition subsequent by which the remainder vested in her by the will could be defeated impossible of performance, as we hold it did, then it would be necessary to decide whether or not the privilege given the sons, or one or more of them, under the third paragraph of the will, to purchase the estate in remainder which vested in the daughters at the death of the testator, passed to the defendant by reason of the deeds from the sons to her. This would involve the consideration of the question as to whether the privilege given the sons, or one or more of them, of buying out the daugh-

ters was a mere personal privilege to be performed by the sons only. A study of the will shows clearly a manifest intent on the part of the testator that his three sons and six daughters should share equally; that the sons, at the expiration of the lease, jointly should have the right of buying out the interests of the daughters if all of the sons were prepared to and desirous of so doing; but, if one or two of the sons should not be so prepared, and so desire, the son or sons so prepared and desirous should have that right. It was a mere privilege accorded to the sons, or one or more of them, if their desires and ability to purchase should permit, of acquiring all the leased lands. The privilege granted seems personal, and no intention can be found in the will that the daughters should be obliged to sell their respective interests in the lands in question at the stated price of $5000 to any one other than the sons, or one or more of them. The condition upon which the remainder which vested in Mrs. Scott, mother of the plaintiffs, could be defeated having become impossible of performance by reason of her death, thus terminating the privilege granted the sons of buying her interest, and defeating the remainder which vested in her, it is unnecessary to determine whether or not that privilege could be exercised by an assignee of the sons.

A judgment may be prepared decreeing that the defendant has no right, title or interest in or to the undivided one-ninth interest in and to the lands described in the agreed statement of facts claimed by the plaintiffs as heirs of Catherine Haunani Scott, vested in the said plaintiffs in fee, and adjudging the plaintiffs to be the absolute owners in fee of said undivided one-ninth interest in and to the said lands, and it is so ordered.

*E. A. Mott-Smith* for plaintiffs.

*A. Perry* for defendant.

Robertson, C. J., dissenting.

DISSENTING OPINION OF ROBERTSON, C.J.

The material portions of the will of the late Mr. Bertelmann are set forth in the former opinion of this court reported in 14 Haw. 378, 385, 386.

The clearly expressed intention of the testator was that the sons should have the right to acquire the whole of the leased land upon giving to the daughters what the testator evidently considered a fair equivalent for the interests devised to them. It was his will "that my lands shall befall in equal shares and interest upon my three sons;" that they "will have a right to buy the whole of my lands now leased to the K. S. Co.;" and that "by doing so, they my sons or he my son will enter in full possession of all my lands, and their or his right and title will be undisputable" etc. Thus did the testator express a dominating intent. It being a lawful intent it is the duty of this court to see that it is carried out. Strictly speaking, I think, the estate given each of the daughters was not an estate upon condition subsequent, but a limitation. The condition precedent to be performed by the sons is that they should pay "to each one of my daughters or surviving daughters the sum of five thousand dollars." The third paragraph of the will, taken by itself, supports the view that the remainders of the daughters after the expiration of the lease would be defeated by death during the term of the lease. Upon a strict literal interpretation of that paragraph it would have to be held that the sons could acquire title to the whole land by paying $5000 to each of such daughters as might be living when the time came for the sons to exercise the right given them, i. e., between the date of the expiration of the lease and one year thereafter. Such literal interpretation is not followed, however, because it is not in harmony with the general intent of the testator as shown by the will as a whole, as held by this court in the former

case, that the daughters were intended to have vested estates in fee. That is, estates which would descend to their respective heirs. But this departure from the language used in the third paragraph, which is required by the entire context, should not be carried to such an extent as to defeat the primary and clearly expressed intent of the testator that his sons should have the right to acquire the whole land by paying for the interests given to the daughters and their heirs. The contingency of the death of a daughter before the expiration of the lease was not provided for. Yet in order to effectuate the intent manifested by the testator it must be held that as to the estate of a deceased daughter which has passed to her heirs the sons should have the right to pay those heirs the sum which the will stated should have been paid to that daughter had she lived. The primary intent of the testator having been ascertained from the will as a whole the language used in any particular paragraph must, if inconsistent with that intent, be made to bend to it. "In case of doubt a will should be construed in favor of a general or primary intention rather than a particular or secondary one; and where in such a case a particular intention, or particular terms, as expressed in some part of the will, are inconsistent with and repugnant to the testator's general intention as ascertained from all the provisions of the will, the general intention must prevail." 40 Cyc. 1393. The general rule, which, it is conceded is well settled, that a condition precedent must be literally performed, should not be enforced in the case of a will when the intent of the testator would thereby be defeated. The general and primary intent was that the sons, or one or more of them, should have the whole land; the language used with reference to the condition upon which they should acquire it was the expression of a secondary and particular intent. The means was secondary to the end, and should yield or conform to it. To hold otherwise, it seems to me, is to sac-

rifice the substance to the shadow upon a narrow and technical view. This is not a case where the literal performance of a condition has become impossible. The condition precedent prescribed in the third paragraph of the will could be literally performed, and, as the agreed facts show, has been performed, notwithstanding the death of one of the daughters, by making the payments to the surviving daughters. Properly construed, however, the condition precedent which the testator imposed to the acquisition by the sons of the estates given to the daughters was not that they should make payment to the surviving daughters only, but that they should pay the sum named for the interest given to each of the daughters and their heirs. The right to acquire the interests of the daughters was not, I think, a mere personal privilege which could not be assigned to and exercised by a vendee of the sons. In my opinion the judgment should be that the plaintiffs are seised in fee of an undivided one-ninth of the land subject to the right of the defendant to acquire the same by the payment of $5000.